# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **JAYCE P. WALTERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. H-11-3562** |
| | § | |
| **HOOVER & STRONG, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Plaintiff Jayce P. Walters ("Plaintiff" or "Walters") has filed suit against Defendants Hoover & Strong, Inc. ("H&S") and Roseco, Inc. ("Roseco") (collectively "Defendants"), alleging infringement of U.S. Patent No. 6,279,436 (filed Aug. 25, 2000) ("the '436 Patent"). Pending before the Court is Defendants' Motion for Summary Judgment and Memorandum in Support of Defendants' Motion for Summary Judgment. (Doc. Nos. 77, 78.)[1]  After considering the Motion, all responses thereto, and the applicable law, the Court concludes that Defendants' Motion for Summary Judgment should be **GRANTED**.

## I.     BACKGROUND

The present patent case involves the field of jewelry making.  The '436 Patent describes a method of creating a precise gemstone seat in a jewelry setting.  Specifically, the '436 Patent claims a method for creating notched surfaces in jewelry settings.  The resulting setting prongs have at least three distinct surfaces, with each surface corresponding to a profile surface of a gemstone.  (Doc. No. 78-2, the '436 Patent, col.6 l.10-51.)  A gemstone is then set in the notched setting prongs so that portions of the gemstone profile surfaces are received in respective

---

[1] The Court will hereinafter refer to Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment as "Motion."

notches.  (*Id.*)  Creating at least three distinct surfaces in the setting results in less material having to be removed from the setting than under the prior art, thereby leaving the setting "stronger and better able to handle deformation in securing the gemstone and subsequent daily wear and tear."  (*Id.* at col.5 l.50-51.)

The '436 Patent includes four claims, two of which are dependent on the first claim.  The claims are set forth below.

> **1.** A method of setting a gemstone having a profile into a metallic base having a setting of substantially uniform thickness, the gemstone profile including at least three distinct surfaces, the method comprising the steps of:
>
>> cutting at least one notch into an inner surface of the setting, said at least one notch having at least three notch surfaces, each notch surface being complementary to a corresponding profile surface of the gemstone;
>>
>> setting the gemstone in the setting so that portions of the gemstone profile surfaces are received in a respective notch;
>>
>> securing the gemstone within the base by manually deforming the setting such that the notch surfaces of each notch substantially conform to the corresponding profile surfaces of the gemstone."
>
> **2.** A method as set forth in claim **1** wherein the surfaces of each notch include a first surface generally parallel to the axis of symmetry, and second and third surfaces which are generally oblique to the axis of symmetry.
>
> **3.** A method as set forth in claim **1** wherein said the first surface of each notch is positioned between the second and third surfaces.
>
> **4.** A method of setting a gemstone having a profile into a metallic base having a setting of substantially uniform thickness, the gemstone profile including at least three distinct surfaces, the method comprising the steps of:
>
>> cutting at least one notch into an inner surface of the setting, said at least one notch having at least three notch surfaces and a pair of corners respectively formed by adjacent notch surfaces, each notch surface being complementary to a corresponding profile surface of the gemstone;
>>
>> setting the gemstone in the setting so that portions of the gemstone profile surfaces are received in a respective notch;
>>
>> securing the gemstone within the base by manually deforming the setting generally along at least one of said corners such that the notch surfaces of each notch substantially conform to the corresponding profile surfaces of the gemstone.

(*Id.* at col.6 l.10-51.)

Parties previously disputed the meaning of certain terms in the patent.  Specifically, they disagreed about the meaning of "a setting of substantially uniform thickness" and "cutting at

least one notch into an inner surface of the setting." (*See generally* Doc. No. 57, Claim Construction Memorandum and Order.)   The Court adopted the following construction of disputed claim terms:

| Term | Construction |
|------|-------------|
| **a setting of substantially uniform thickness** | a setting that does not have any noticeable notches along the inner surface |
| **cutting at least one notch into an inner surface of the setting** | removing material from the inner surface of the setting to create at least one notch |

(*Id.* at 18.)

Plaintiff's Final Infringement Contentions include approximately 988 accused instrumentalities.  (Doc. No. 78-4, Final Infringement Contentions, Exs. A, B, C, D.)  H&S manufactures and sells each of these products.  (Doc. No. 718-12, Decl. of Torrance D. Hoover ("Hoover Decl.") ¶ 3.)[2]  Plaintiff also identifies five Roseco products that are allegedly infringing.  (Final Infringement Contentions, Ex. E.)  H&S manufactures each of these products, and each is listed in Exhibit A of Plaintiff's Final Infringement Contentions.  (Final Infringement Contentions, Ex. A; Doc. No. 718-19, Decl. of Robert W. Rose ("Rose Decl.") ¶ 4.)  H&S sells these products to Roseco, and Roseco does not alter them in any way before reselling them.  (Rose Decl. ¶¶ 3–4.)

Defendants explain that the 988 accused products consist of only forty-eight discrete product models.  (Hoover Decl. ¶ 3.)  Plaintiff does not dispute this characterization.  Defendants break down the forty-eight unique product models into three types of products: (1) eight Prior

---

[2] H&S maintains that it does not manufacture one of the accused instrumentalities, a product model SH617/SPV62W10.  (Hoover Decl. ¶ 3.)  Plaintiff, in his Response to the Motion, does not dispute this claim, and, indeed, purports to remove it from his list of accused instrumentalities.  (Resp. at 3.)

Art Products, which contain bezel settings that do not have pre-formed notches; (2) thirty-five Pre-Notched Products, which include settings that have one of five distinct shapes of notches; and (3) five Channel Band Products, which have a continuous channel in the interior of the ring, fabricated during the manufacturing process, that forms a seat for gemstones to be set in.  (*Id.* ¶¶ 5, 7, 8.)  Plaintiff again does not dispute this characterization.  He does clarify, however, that the only products that he intended to accuse are those that include the True-Seat® line of settings. (Doc. No. 78-3, Walters Dep. 140:10–142:8.)

Torrance Hoover, President of H&S, states that none of the Prior Art Products has noticeable notches along their inner surface.  (*Id.* ¶ 5.)  Plaintiff does not appear to disagree with this statement.  Rather, in his Response to the Motion, Plaintiff explicitly indicates that "none of the Prior Art Products as defined in the Hoover Declaration infringe on the '436 Patent."  (Doc. No. 79, Resp. at 10.)  Accordingly, the parties disagree only as to whether the forty discrete Pre-Notched Products and Channel Band Products infringe on the '436 Patent.

Hoover explains that each of the Pre-Notched Products are made by either (1) stamping (also known as die-striking) the setting prongs from a sheet of precious metal using a hub and die that has the setting notch pre-formed in the master hub or die; or (2) casting the entire setting by pouring molten precious metal into a mold with the notched seat pre-formed in the mold. (Hoover Decl. ¶ 9.)  In casting, the mold includes a protrusion in the prong portion that corresponds to and creates a notch in the setting prong.  (*Id.* ¶ 11, Ex. 5-1.)  Once the molten metal cools, the resulting product includes settings with notches on the interior.  (*Id.* ¶ 11.)  In stamping, or die striking, the setting is formed by pressing a sheet of metal into a master hub or die.  (*Id.* ¶ 12, Exs. 5-2, 5-3.)  The master hub has protrusions on those portions that correspond to the inner surface of each setting.  (*Id.*)  Under considerable physical force, the sheet of metal

4

deforms and takes the shape of the master hub.  (*Id.*)  In both of these processes, the notches in the settings are formed at the time the setting is manufactured.  (*Id.* ¶ 9.)

Hoover also explains that the seats in the Channel Band Products are similarly formed during the manufacturing process.  (*Id.* ¶ 8.)  Although Hoover does not provide much detail beyond this on how the Channel Band Products are made, record evidence suggests they are made by die striking.  (*See* Final Infringement Contentions, Ex. C.)

Plaintiff does not present any evidence that contradicts Hoover's explanation of how the accused instrumentalities are made.   Rather, Plaintiff represents that there are three ways to create notches on the inner surface of a setting: (1) casting, (2) stamping, and (3) "the removal method," which he defines as "removing material from the inner surface of the setting that does not have any noticeable notches along the inner surface."  (Doc. No. 79-6, Expert Report of Jayce Walters on Infringement ("Walters Infringement Expert Report") at 9.)  Plaintiff states that he "do[es] not have enough information [about] which of the above methods are used to make the Specific Accused Instrumentalities."  (*Id.*)  Accordingly, utilizing himself as his own expert, he explains why each method, either literally or under the doctrine of equivalents, infringes on the '436 Patent.  (*See* Walters Infringement Expert Report at 10–24.)

Plaintiff alleges that Defendants are infringing on all four claims of the '436 Patent.  (Doc. No. 28, Second Am. Compl. ¶ 8; Final Infringement Contentions at 1.)  Specifically, Walters claims H&S infringes on the claims in the '436 Patent directly under 35 U.S.C. §§ 271(a) and (g) by making and selling products that utilize the claimed methods for setting gemstones.  (Final Infringement Contentions at 2–4.)  Walters also claims H&S and Roseco both indirectly infringe on the claimed methods under 35 U.S.C. §§ 271(b) and (c).  (*Id.*)

Defendants argue that none of the accused instrumentalities infringes, either literally, or under the doctrine of equivalents, on the '436 Patent. (Mot. at 14–22.) Defendants also argue that the '436 Patent is invalid as anticipated under 35 U.S.C. § 102 and as obvious under 35 U.S.C. § 103. (*Id.* at 22–24.)

## II.   LEGAL STANDARD

To grant summary judgment, a court must find that the pleadings and evidence show that no genuine issue of material fact exists, and that the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* If the moving party meets this burden, the nonmoving party must then go beyond the pleadings to find specific facts showing there is a genuine issue for trial. *Id.* "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citation omitted) (internal quotation marks omitted).

"Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party." *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007). Courts may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Liquid Air Corp.*, 37 F.3d at

1075 (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  However, "summary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  *Liquid Air Corp.*, 37 F.3d at 1076 (citation omitted) (internal quotation marks omitted).  A court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts.  *Id.* at 1075.

## III.   ANALYSIS

### A.   Direct Patent Infringement

35 U.S.C. § 271(a) states: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(g) provides:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall he liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent. . . .

"Both sections deal with direct infringement; § 271(a) deals with the production, use or sale of patented inventions, while § 271(g) deals with the importation, sale, or use of products made by a process patented" in the United States.  *Avery Dennison Corp. v. UCB Films PLC*, No. 95 C 6351, 1997 WL 665795, at *2 (N.D. Ill. Oct. 20, 1997).  "[T]he Federal Circuit has never found a method claim to infringe the "sells" or "offers to sell" prong of Section 271(a), though it has never directly addressed the issue."  *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 874 F. Supp. 2d 526, 544 (E.D. Va. 2012).  In contrast, 35 U.S.C. § 271(g) plainly creates a cause of action for the sale of a product made using a patented method.  However, if a defendant is found not liable

7

for infringement under 35 U.S.C. § 271(a) in making the products that are the subject of a claim under 35 U.S.C. § 271(g), the sale of the resulting products cannot be found to infringe under 35 U.S.C. § 271(g). *Avery*, 1997 WL 665795, at *2.

To prove direct infringement, a plaintiff must show that the accused infringer "perform[ed] all the steps of the claimed method, either personally or through another acting under his direction or control." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012). "[I]t is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010).

Direct infringement is shown if one or more claims read on the accused device either literally or under the doctrine of equivalents. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (citing *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001)). "To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Networld, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Mannesmann Demag Corp. v. Engineered Metal Prods. Co., Inc.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986). Even if a device does not literally infringe a claim, it may nonetheless infringe under the doctrine of equivalents if "the differences between elements of the accused product and the patented invention [are] insubstantial to one of ordinary skill in the art." *Tesco Corp. v. Weatherford Int'l Inc.*, 750 F. Supp. 2d 780, 798 (S.D. Tex. 2010) (citing *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009)) (internal quotation marks omitted). The doctrine of equivalents recognizes that:

> The language in the patent claims may not capture every nuance of the invention
> or describe with complete precision the range of its novelty. If patents were

> always interpreted by their literal terms, their value would be greatly diminished.
> Unimportant and insubstantial substitutes for certain elements could defeat the
> patent, and its value to inventors could be destroyed by simple acts of copying.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731 (2002).

However, the doctrine of equivalents "must be applied to individual elements of the claim, not to

the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29

(1997). This is to ensure "that no limitation be read completely out of the claim." *DePuy Spine,*

*Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006) (citing *Freedman*

*Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005)).

"Infringement, either literal or under the doctrine of equivalents, is a question of fact."

*Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1344 (Fed. Cir. 2013) (citing

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir.

2009)). Nonetheless, "[a]n infringement issue is properly decided upon summary judgment

when no reasonable jury could find that every limitation recited in the properly construed claim

either is or is not found in the accused device either literally or under the doctrine of

equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001) (citing *Bai v. L & L*

*Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

### 1. Prior Art Products

H&S presents evidence that none of the accused Prior Art Products has noticeable

notches along their inner surface. (Hoover Decl. ¶ 5.) Plaintiff does not controvert this

evidence.[3] Because each of the claims of the '436 Patent describes a method for creating at least

one notch along the inner surface of a setting (*see* the '436 Patent, col.6 l.10-51), products

lacking such a notch cannot be infringing. As Plaintiff does not present proof that any of

accused Prior Art Products contain at least one notch along the inner surface of the setting,

---

[3] Indeed, Plaintiff concedes that none of the Prior Art Products infringes on the '436 Patent. (Resp. at 10.)

summary judgment as to Plaintiff's claim that the Prior Art Products directly infringe on the '436 Patent is appropriate. *Liquid Air Corp.*, 37 F.3d at 1075; *cf. Bakhico Co., Ltd. v. Shasta Beverages, Inc.*, No. Civ.A.3:94-CV-1780-H, 1998 WL 25572, at *8 (N.D. Tex. Jan 15, 1998) (granting motion for summary judgment where plaintiff explicitly withdrew certain claims); *Keen v. SunTrust Mortg., Inc.*, No. 1:10–CV–733, 2013 WL 1181451, at *7 (N.D. Tex. Mar. 19, 2013) (granting summary judgment where plaintiff failed to acknowledge existence of a claim and cited no evidence in support of said claim).

### 2.    Pre-Notched Products

H&S presents evidence that all of the Pre-Notched Products are made by either stamping or casting.  (Hoover Decl. ¶ 9.)  Hoover explicitly states that H&S does not use the removal method to make any of the Pre-Notched Products.  (*Id.* ¶ 15.)  Plaintiff does not controvert this evidence, but states that he "does not have enough information" about the methods used to make the accused products.  (Walters Infringement Expert Report at 9.)  He points out that, in addition to casting and stamping, the accused instrumentalities could be made using the removal method. (*Id.*)  However, because he presents no actual evidence that any of the Pre-Notched products are made using the removal method, the Court relies on the uncontroverted evidence that H&S makes the Pre-Notched Products through either casting or stamping.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (stating that summary judgment is appropriate where nonmovant does not identify specific evidence demonstrating a genuine issue of material fact, relying instead on only unsubstantiated assertions and unsupported speculation).

Defendants argue that none of the Pre-Notched Products infringes on the '436 Patent either literally or under the doctrine of equivalents.  (Mot. at 14–18.)  They contend that casting and stamping are not equivalent to the claimed methods because (1) neither method is performed

on a setting of substantially uniform thickness or its equivalent; (2) neither method is performed by first pairing a setting with a specific gemstone;[4] and (3) neither method involves cutting or its equivalent.  (*Id.*)  Plaintiff responds that those Pre-Notched Products made by stamping infringe either literally or under the doctrine of equivalents.  (Doc. No. 79-1, Decl. of Jayce Walters ("Walters Decl.") ¶¶ 17, 18; Walters Infringement Expert Report at 20; Final Infringement Contentions at 5 n.2.)  He argues that those Pre-Notched Products made by casting infringe under the doctrine of equivalents.  (Walters Decl. ¶ 19; Walters Infringement Expert Report at 15; Final Infringement Contentions at 5 n.2.)

### a.  Stamping

Products made by stamping do not literally infringe on the '436 Patent.  As this Court has already held, the preamble of the two independent claims is limiting on the claims.  (Claim Construction Memorandum and Order at 10.)  Accordingly, when the '436 Patent refers to "the setting" in the body of the claims, it refers to "a setting of substantially uniform thickness," which this Court has construed to mean "a setting that does not have any noticeable notches along the inner surface."  (*Id.* at 10, 18.)  During the stamping process, no such setting ever exists.  As both parties' description of the stamping process reveals, the setting is created with the desired notch along the inner surface.  (*See* Walters Decl. ¶ 17; Hoover Decl. ¶ 12.)  Because a setting of substantially uniform thickness never exists, no material can be cut, or removed, from it, as required to literally infringe the patent.  (*See* the '436 Patent col.6 l.15-19, col.6 l.37-44); *Networld*, 242 F.3d at 1353.  Although Plaintiff certainly asserts that stamping literally removes material from the inner surface of a setting (*see* Walters Infringement Expert Report at

---

[4] Defendants did not argue that this was a limitation of the '436 Patent during the claim construction phase of the case.  (*See generally* Doc. No. 52, Defendants' Responsive Claim Construction Brief.)  Because the Court can resolve the Motion without determining if the claims in the '436 Patent require that the setting first be matched with a specific gemstone before a claimed method is performed, the Court need not reach this particular argument.

20), the expert report never explains how this can possibly be so.  Even setting aside any concerns about whether stamping is literally cutting, Plaintiff entirely fails to show how stamping a sheet of metal is the literal equivalent of removing material *from the inner surface of a setting of substantially uniform thickness*.

The Pre-Notched Products made by stamping also do not infringe on the '436 Patent under the doctrine of equivalents.  The doctrine of equivalents requires that the "accused device or process . . . be more than 'equivalent' *overall*."  *Warner-Jenkinson*, 520 U.S. at 29 (citations omitted) (emphasis in original).  Here, even assuming that stamping is the equivalent of cutting, there is no equivalent to the setting of substantially uniform thickness.  Both parties agree that the stamping process is performed on a sheet of metal, not on a setting.  (*See* Walters Decl. ¶ 17; Hoover Decl. ¶ 12.)  The mere fact that the die and hub ultimately create a setting with a notched inner surface is not sufficient to deem H&S's stamping process infringing.  *Warner-Jenkinson*, 520 U.S. at 29 (recognizing that the doctrine of equivalents "must be applied to individual elements of the claim, not to the invention as a whole").  The Court has not been presented with any argument that the sheet of metal is equivalent to a setting of substantially uniform thickness.  And indeed, the Court would be highly skeptical of such an argument, as it would vitiate the requirement that the patented method be formed on a specific type of setting.  *See Warner-Jenkinson,* 520 U.S. at 29 ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."); *Freedman*, 420 F.3d at 1358 ("[A]n element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation."); *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) ("[I]f a court determines that a

finding of infringement under the doctrine of equivalents would entirely vitiate a particular claim[ed] element, then the court should rule that there is no infringement under the doctrine of equivalents." (citations omitted) (internal quotation marks omitted); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) ("[T]he doctrine of equivalents does not grant [a patentee] license to remove entirely [any of the] limitations from the claim.").

Furthermore, the Court notes that Plaintiff has not presented any competent evidence that stamping is equivalent to cutting. Unsupported ultimate conclusions by an expert cannot create a genuine issue of material fact for trial on the issue of equivalence. *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) ("[T]he affidavit of an expert submitted in opposition to a motion for summary judgment . . . must set forth the factual foundation for his opinion . . . in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the nonmovant."); *see also Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) ("[U]nsupported . . . affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." (citation omitted) (internal quotation marks omitted)). "If all expert opinions on infringement or noninfringement were accepted without inquiry into their factual basis, summary judgment would disappear from patent litigation." *Novartis*, 271 F.3d at 1051. Here, Plaintiff, using himself as his own expert, does no more than state that, in his opinion, if stamping does not literally infringe on the '436 Patent, it does so under the doctrine of equivalents. (Walters Infringement Expert Report at 20.) Plaintiff has provided no factual basis for the conclusion in his expert report that no substantial differences exist between cutting and stamping.

**b.      Casting**

Finally, the Pre-Notched Products made by casting also do not infringe on the '436 Patent under the doctrine of equivalents.  H&S presents evidence that the casting process is performed on molten metal.  (Hoover Decl. ¶ 11.)  Plaintiff does not appear to disagree with this description, but argues that, because H&S, in creating the mold used in the casting process, necessarily cuts a notch into the inner surface of the mold, casting infringes on the '436 Patent under the doctrine of equivalents.  (Walters Decl. ¶ 19; Walters Infringement Expert Report at 15; Final Infringement Contentions at 5 n.2.)  Defendants correctly point out that Plaintiff does not support this allegation by any factual evidence.  (Doc. No. 80, Reply at 6); *see Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (expert's conclusion of infringement could not create a genuine issue of fact when there was no factual support for his conclusion).  However, even assuming that H&S does make its molds in the manner Plaintiff contends, Plaintiff's argument that cutting a notch into a mold is equivalent to the claimed methods boils down to an argument that the requirement that the claimed method be performed on a setting of substantially uniform thickness be read out of the '436 Patent.  As explained *supra* Part III.A.2.a, the Court cannot conclude that a product is infringing under the doctrine of equivalents when such a conclusion would eliminate an element of the claim.  *See Warner-Jenkinson,* 520 U.S. at 29; *Freedman*, 420 F.3d at 1358; *Lockheed Martin*, 324 F.3d at 1321; *Sage Prods.*, 126 F.3d at 1424.

**3.      Channel Band Products**

Defendants also argue that Plaintiff has not produced any evidence that the Channel Band Products are infringing.  Specifically, they contend that, (1) the method is not performed by first

pairing a setting with a specific gemstone,[5] and (2) Plaintiff has not produced any evidence that anyone has actually used an infringing method to make a Channel Band Product.  (Mot. at 21–22.)  Plaintiff does not provide any distinct response as to why the Channel Band Products are infringing, instead simply stating that the Channel Band Products "infringe for the same reasons stated above regarding Pre Notched Products" and incorporating wholesale the Walters Infringement Expert Report.  (Resp. at 10.)

The Court agrees with Defendants that Plaintiff has produced no evidence of anyone using the patented method, or its equivalent, to create any of the Channel Band Products. Plaintiff merely asserts that the "profile of the notch [in the Channel Band Products] specifically infringes on Claim 1" of the '436 Patent.  (Walters Decl. ¶ 16.)  This shows only that the Channel Band Products *may* have been produced by an infringing method.  *See Fujitsu*, 620 F.3d at 1329 ("[I]t is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement.").  Plaintiff's expert report is similarly unavailing; he admits that he does not know which method was used to make any of the infringing products.  (Walters Infringement Expert Report at 9.)  To survive summary judgment, Plaintiff had to come forward with some evidence that Defendants used an infringing method to create the Channel Band Products.  The burden is not high.  For instance, Plaintiff could have satisfied it with deposition testimony from an employee of H&S that the seats in the Channel Band Products initially do not have any noticeable notches on them, and H&S utilizes the removal method to create at least one notch on the inner surface of these settings.  Plaintiff cannot survive summary judgment, however, by pointing to nothing more than the possibility that the Channel Band Products might have been manufactured using an infringing method.

---

[5] Again, as in *supra* Part III.A.2, the Court need not determine whether the patented method requires that the setting be matched with a specific gemstone before the patented method is performed.

Furthermore, although H&S does not provide a detailed explanation of how the Channel Band Products are made, the Court notes that the record indicates that the Channel Band Products Plaintiff accuses are all made by die striking, also known as stamping.   (Final Infringement Contentions, Ex. C; Hoover Decl. ¶¶ 8, 9.)   Because the Court has already concluded, in its analysis of the Pre-Notched Products, that no evidence exists to support a finding that stamping infringes, either literally or under the doctrine of equivalents, on the '436 Patent (*see supra* Part III.A.2.a), the same analysis applies equally to the Channel Band Products made by stamping.

Based on the foregoing, summary judgment is granted as to all of Plaintiff's claims of direct infringement.

### B.      Indirect Patent Infringement

Walters also claims H&S and Roseco both indirectly infringe on the claimed methods under 35 U.S.C. §§ 271(b) and (c).   (Final Infringement Contentions at 2–4.)   A party's acts may constitute indirect infringement under 35 U.S.C. §§ 271(b) and (c) if a party actively induces or contributes to infringement.   *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). There cannot be indirect infringement absent direct infringement.   *Id.* ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement." (citations omitted)); *see also Akamai*, 692 F.3d at 1308.   As discussed *supra* Part III.A, none of the accused instrumentalities directly infringes on the '436 Patent. Accordingly, summary judgment on Plaintiff's indirect infringement claims is granted.

### C.      Invalidity

In addition to arguing non-infringement, Defendants also argue that the '436 Patent is invalid as anticipated under 35 U.S.C. § 102 and as obvious under 35 U.S.C. § 103.   (Mot. at 22–

24.)  Where a case is decided on non-infringement, a district court is not required to resolve any affirmative defenses of invalidity.  *Solomon Techs., Inc. v. Int'l Trade Comm'n*, 524 F.3d 1310, 1319 (Fed. Cir. 2008) (collecting cases recognizing that were invalidity is an affirmative defense and not a counterclaim, courts need not assess the invalidity arguments if the case can be resolved on the basis of a finding of non-infringement) (citations omitted).   Here, Defendants plead anticipation and obviousness only as an affirmative defense.  (Doc. No. 30, Answer and Affirmative Defenses to Second Amended Complaint ¶ 19.)   Accordingly, the Court need not resolve Defendants' invalidity arguments.

## IV.   CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. No. 77) is **GRANTED**.  The case is **DISMISSED WITH PREJUDICE**.


**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 1st day of May, 2013.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE